UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NATHAN WILLIAMS,

                          Plaintiff,

          v.

NDOC, et al.,

                          Defendants.

Case No. 2:22-cv-01743-RFB-NJK

**SCREENING ORDER**
**FIRST AMENDED COMPLAINT**

<u>Pro se</u> Plaintiff Nathan Williams, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and filed an application to proceed <u>in forma pauperis</u> ("IFP"). (ECF Nos. 11, 5). The Court considers Plaintiff's IFP application complete, but it defers ruling on that application until later. Plaintiff timely filed a First Amended Complaint ("FAC") in compliance with the Court's November 9, 2022, order. (ECF Nos. 4, 11). Plaintiff also moves for a temporary restraining order and preliminary injunction ("TRO/PI") mandating that he be moved to a facility that is not operated by the NDOC and pending criminal charges against him be dropped. (ECF Nos. 6, 7).

The Court screens the FAC under 28 U.S.C. § 1915A. In doing so, the Court finds that the FAC does not comply with Federal Civil Procedure Rules 18 and 20 because it concerns claims that arise out of different transactions and are against different groups of defendants. So the Court dismisses the FAC without prejudice in its entirety and gives Plaintiff until May 19, 2023 to file an amended complaint that complies with Rules 18 and 20. And because Plaintiff has not yet stated a colorable claim for relief, the Court denies his TRO/PI motions without prejudice to his ability to refile those motions if he chooses to file an amended complaint.

## I.      FILING FEE

On November 9, 2022, the Court denied Plaintiff's first and second IFP applications because they were incomplete and gave him until January 9, 2023, to either pay the filing fee or file a new fully complete IFP application. (ECF No. 4). Before that deadline expired, Plaintiff filed a third IFP application that consisted of the first three pages of the Court's form application, which Plaintiff completed, and a written statement explaining that prison officials have incorrectly filed his documents. (ECF Nos. 5, 5-1). The Court notes that Plaintiff filed a completed financial certificate and an inmate trust account statement for the previous six months with his first IFP application. (ECF No. 1-1). Based on these filings, the Court finds that Plaintiff's IFP application is complete. But the Court defers ruling on the IFP application until later.

## II.     SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at §§ 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a

1   complaint for failure to state a claim upon which relief can be granted is provided for in

2   Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under

3   § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a

4   court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend

5   the complaint with directions as to curing its deficiencies, unless it is clear from the face

6   of the complaint that the deficiencies could not be cured by amendment. Cato v. United

7   States, 70 F.3d 1103, 1106 (9th Cir. 1995).

8        Review under Rule 12(b)(6) is essentially a ruling on a question of law. See

9   Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to

10   state a claim is proper only if it the plaintiff clearly cannot prove any set of facts in support

11   of the claim that would entitle him or her to relief. Id. at 723–24. In making this

12   determination, the Court takes as true all allegations of material fact stated in the

13   complaint, and the Court construes them in the light most favorable to the plaintiff.

14   Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se

15   complainant are held to less stringent standards than formal pleadings drafted by lawyers.

16   Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not

17   require detailed factual allegations, a plaintiff must provide more than mere labels,

18   conclusions, or a formulaic recitation of a claim's elements. Bell Atl. Corp. v. Twombly,

19   550 U.S. 544, 555 (2007).

20        Additionally, a reviewing court should "begin by identifying [allegations] that,

21   because they are no more than mere conclusions, are not entitled to the assumption of

22   truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

23   the framework of a complaint, they must be supported with factual allegations." Id. "When

24   there are well-pleaded factual allegations, a court should assume their veracity and then

25   determine whether they plausibly give rise to an entitlement to relief. Id. "Determining

26   whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

27   requires the reviewing court to draw on its judicial experience and common sense." Id.

28

3

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable—like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist—as well as claims based on fanciful factual allegations like fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).

## III.    SCREENING OF FAC

In his FAC, Plaintiff sues dozens of individuals, a funeral-service provider, and the NDOC for events that allegedly took place while he was released on parole and incarcerated at High Desert State Prison ("HDSP"). (ECF No. 11 at 1–8). Plaintiff brings 54 claims and seeks monetary and injunctive relief. (Id. at 26). Plaintiff alleges the following.[1]

### A.    Factual allegations

#### 1.    Claim 1

From April 5, 2022, to the filing of the FAC, over 40 Defendants conspired to deter Plaintiff "from attending or from testifying freely and truthfully in federal court" using "fraud, force, intimidation, or threat[s]" against him. (Id. at 22). This resulted in Plaintiff being arrested for murder, having his parole violated, and being held "in the hole" in solitary confinement from May 5 to October 26, 2022. (Id.) Over 860 days of Plaintiff's "stat time was revoked," he remains incarcerated, his property was seized, and he lost his job. (Id.) The man Plaintiff is charged with having murdered is still alive. (Id.)

#### 2.    Claim 2

From April 20, 2022, to the filing of the FAC, over 10 Defendants conspired to retaliate against Plaintiff for filing lawsuits and grievances about the conditions of his confinement. (Id. at 21). After prison staff labeled Plaintiff a snitch, he was beat, stabbed, repeatedly assaulted, spat on, and ostracized. (Id.) Plaintiff was prevented from defending against the murder investigation against him. (Id.) Since being released from solitary

---

[1] The pages of the FAC appear to have been filed out of order, but Plaintiff clearly numbered each page, so the Court reads the FAC as if it had been filed consistent with Plaintiff's page numbers.

confinement on October 26, 2022, Plaintiff has been held in his cell for over 20 hours a day most days. (Id.)

### 3. Claim 3

Yektal Yung denied Plaintiff a parole revocation hearing. (Id. at 25).

### 4. Claim 4

Toney Abbatangelo represented Plaintiff in his criminal case. (Id.) Abbatangelo denied Plaintiff effective assistance of counsel by obtaining over four continuances of Plaintiff's preliminary hearing after he was charged with murder, and he refused to gather evidence proving that the murder victim was still alive. (Id.) Security footage would show that the victim, Bryant Johnson, was housed in a holding cell at Clark County Detention Center with Plaintiff, long after the date Plaintiff allegedly killed him. (Id.) Abbatangelo denied Plaintiff his right to cross-examine witnesses and told the prosecutor that Plaintiff is "not just gonna walk away from this." (Id.)

### 5. Claim 5

Kenneth Frizzell represented Plaintiff in his criminal case. (Id. at 19). Frizzell denied Plaintiff effective assistance of counsel by not working on Plaintiff's criminal case and taking the case despite knowing the large amount of work it would entail. (Id.)

### 6. Claims 6 and 7

On April 12, 2022, Michelle Leavitt issued a search warrant against Plaintiff and his property in conjunction with a murder investigation, even though no one had been killed. (Id.) Leavitt conspired to do this to retaliate against Plaintiff for accessing the court. (Id. at 11). Leavitt is a Nevada Eighth Judicial District Court Judge. (Id. at 5).

### 7. Claim 8

Sciscento refused to allow Plaintiff to face his accusers or cross-examine witnesses during his preliminary hearing in Case No. 22-02215 or to ask about security footage taken weeks after the charged murder showing Plaintiff and the murder victim sharing a holding cell. (Id. at 11). Sciscento also "intimidated" Plaintiff into returning to the courtroom by coming to the holding cell where Plaintiff had retreated after Abbatangelo

1  stated he couldn't represent Plaintiff anymore due to a conflict of interest. (Id.) Sciscento

2  also gave the prosecution nine continuances of Plaintiff's preliminary hearing. (Id. at 13).

3  Sciscento is a Nevada Eighth Judicial District Judge. (Id. at 5).

4        **8.**    **Claims 9 to 39**

5       Plaintiff was arrested and charged with murder because 32 Defendants falsified

6  legal documents and knowingly submitted them to the court. (Id. at 13).

7        **9.**    **Claim 40**

8       Correctional Officer Lieutenant Ontiveros labeled Plaintiff a snitch for filing lawsuits

9  and grievances. (Id. at 15). As a result, Plaintiff was spit on, his food was spit in, his life

10  was threatened, and he was repeatedly assaulted, beaten, and stabbed. (Id.)

11        **10.**    **Claim 41**

12       Correctional Officer Wagner threatened to spit into Plaintiff's food because Plaintiff

13  asked for a grievance when he was denied a legal call and access to the court. (*Id.*) This

14  caused Plaintiff to fear for his life, be afraid to access the grievance process and court.

15  (*Id.*) And Plaintiff went hungry because he was afraid to eat the food brought to him. (*Id.*)

16        **11.**    **Claims 42 to 45**

17       On June 12, 2022, and thereafter, two Jane Does, a John Doe, and Las Vegas

18  Metropolitan Police Department ("LVMPD") Supervisor Christopher Dericco denied

19  Plaintiff's request for a parole revocation hearing. (Id. at 17). These Defendants wanted

20  Plaintiff to waive his right to a hearing until after the murder charge against him was

21  resolved. (Id.) This resulted in Plaintiff being placed "in the hole" from May 2 to October

22  26, 2022. (Id.)

23        **12.**    **Claims 46 to 48**

24       Prosecutors Steve Wolfson, Agnes Bothello, and James Puccineli falsified and

25  knowingly filed false documents in Plaintiff's criminal case. (Id.)

26        **13.**    **Claims 49 to 52**

27       On December 22 and 29, 2022, and from May 5, 2022, until the filing of the FAC,

28  Prison staff Cook and Garcia "maliciously and vindictively ripp[ed] [Plaintiff's] name from

the list[.]" (<u>Id.</u> at 19). This "frustrated" Plaintiff's ability to prosecute his own claim and participate in his own defense. (<u>Id.</u>) Plaintiff has been unable to access his appellate case before the Ninth Circuit Court of Appeals. (<u>Id.</u>) Prison staff Harold Allen, Douglas Rands, Garcia, and Cook had Plaintiff's court communications and documents sent to an address on Fourth Street in Las Vegas, Nevada. (<u>Id.</u>)

### 14.   Claim 53

Senior Correctional Officer Fontes "retaliated" against Plaintiff when he had him moved to "7/8 quad" because Plaintiff complained that Fontes wasn't letting Plaintiff use the phone enough. (<u>Id.</u> at 23). Ontiveros had Plaintiff beaten and stabbed by labeling him a snitch. (*Id.*)

### 15.   Claim 54

Prison officials and staff Bean, Rodriguez, Gonzalez, Ontiveros, Fontes, Wagner, Silbur, Larson, and Dill misapplied the death penalty statute against Plaintiff, which resulted in Plaintiff being subject to excessive lockdowns for over 23 hours a day from May 5 to October 26, 2022, and lockdowns for over 20 hours a day thereafter. (<u>Id.</u>) Plaintiff has had only one to two hours of exercise outside his cell on a weekly basis. (<u>Id.</u> at 24). Plaintiff is double celled. (<u>Id.</u>)

### B.   Improper joinder

A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Rule 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." But unrelated claims that involve different defendants must be brought in separate lawsuits. <u>See George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (holding that "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if

1   filed by a prisoner"). This rule is not only intended to avoid confusion that arises out of

2   bloated lawsuits, but also to ensure that inmates pay the required filing fees for their

3   lawsuits and prevent inmates from circumventing the three strikes rule under the Prison

4   Litigation Reform Act. See 28 U.S.C. § 1915(g).

5        Based on the allegations of the FAC, Plaintiff contends that trial counsel in his

6   criminal case have been ineffective; judges, prosecutors, and investigators in his criminal

7   case committed errors or are biased; parole officials violated his Fourteenth Amendment

8   due process rights when they revoked his parole without a final hearing and relied on

9   false statements; and prison officials violated his rights under the First, Eighth, and

10  Fourteenth Amendments when they retaliated against him for filing grievances and

11  lawsuits, interfered with his ability to access the courts, failed to protect him from other

12  inmates' threats, and confined him to his cell for 20–23 hours each day for an extended

13  period. In sum, Plaintiff's claims arise out of three different transactions and involve

14  different groups of defendants. Claims 4–39 and 46–48 arise out of Plaintiff's pending

15  criminal case and are against the judges, attorneys, prosecutors, investigators, and law-

16  enforcement personnel associated with that proceeding.[2] Claims 1, 3, and 42–45 arise

17  out of Plaintiff's parole revocation and are against the parole officials associated with that

18  proceeding. And Claims 2, 40, 41, 49–52, 53, and 54 arise out of Plaintiff's conditions of

19  confinement at HDSP and are against prison official and employees.

20       The Court dismisses the entire FAC without prejudice and with leave to amend

21  because it does not comply with Rules 18 or 20. Plaintiff cannot pursue claims for three

22  different transactions in the same lawsuit. Instead, Plaintiff must choose which transaction

23  he wishes to pursue in this action and bring claims associated with only that transaction.

24  _____

25       [2] Plaintiff is cautioned that the comity-based Younger abstention doctrine prevents federal courts from interfering with pending state court criminal proceedings by granting injunctive or declaratory relief,

26  even if there is an allegation of a constitutional violation, unless there is an extraordinary circumstance that creates a threat of irreparable injury. Younger v. Harris, 401 U.S. 37, 53–54 (1971). The United States Supreme Court has instructed that "federal-court abstention is required" when there is "a parallel, pending

27  state criminal proceeding." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013) (emphasis added); Gilbertson v. Albright, 381 F.3d 965 (9th Cir. 2004) (federal courts generally abstain from granting any relief

28  that would interfere with pending state judicial proceedings). Injuries are only irreparable if the threat to a petitioner's federally protected rights cannot be eliminated through his defense of the criminal case. Younger, 401 U.S. at 46.

The Court grants Plaintiff leave to file an amended complaint to accomplish this. If Plaintiff wishes to pursue claims about the other transactions, he must file a complaint in a new action or actions and either pay the required filing fee or properly apply to proceed <u>in forma pauperis</u>.

Plaintiff is advised that each claim he brings in this action must be permitted by either Rule 18 or Rule 20. What this means is that Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under FRCP 18. Plaintiff may also add any additional claims against other defendants **if those claims arise from the same transaction, occurrence, or series of transactions as his original claim**. Fed. R. Civ. P. 20(a)(2). Any claims that are not permitted to be joined by the Federal Rules of Civil Procedure will be dismissed as improperly joined.

If Plaintiff chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself. <u>See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1546 (9th Cir. 1989). Plaintiff should file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "Second Amended Complaint." Plaintiff must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege <u>facts</u> sufficient to show what <u>each defendant</u> did to violate his civil rights.

**IV.   TRO/PI MOTIONS**

Plaintiff moves for a temporary restraining order and a preliminary injunction requiring that he be moved to a facility that is not operated by the NDOC and for the pending criminal charges against him to be dropped. (ECF Nos. 6, 7). This relief is related to two different transactions: (1) Plaintiff's criminal case and (2) the conditions of Plaintiff's confinement at HDSP. As the Court explained above, Plaintiff cannot pursue claims about these different transactions in the same action. Because the Court has dismissed the FAC in its entirety with leave to file an amended complaint that complies with Rules 18 and 20,

1   it denies the TRO/PI motions without prejudice to Plaintiff's ability to file new motions if

2   he chooses to file an amended complaint.

3          If Plaintiff chooses to file an amended complaint and to file new motions for pretrial

4   equitable relief, he is advised that restraining orders and preliminary injunctions are

5   "extraordinary remed[ies] never awarded as of right." Winter v. Nat. Res. Def. Council,

6   Inc., 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order

7   and the legal standard for obtaining a preliminary injunction are "substantially identical."

8   See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co., 240 F.3d 832, 839 n.7 (9th Cir.

9   2001), overruled on other grounds by Winter, 555 U.S. at 20. The Supreme Court clarified

10  the standard for these forms of equitable relief in Winter v. Natural resources Defense

11  Council, Inc., instructing that the plaintiff "must establish that [he] is likely to succeed on

12  the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary relief,

13  that the balance of equities tips in [his] favor, and that an injunction [or restraining order]

14  is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional

15  standard: "if a plaintiff can only show that there are 'serious questions going to the

16  merits'—a lesser showing than likelihood of success on the merits—then a preliminary

17  injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,

18  and the other two Winter factors are satisfied.'" Shell Offshore, Inc. v. Greenpeace, Inc.,

19  709 F.3d 1281, 1291 (2013) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d

20  1127, 1135 (9th Cir. 2011)).

21         Moreover, a plaintiff who seeks a mandatory injunction—one that goes beyond

22  simply maintaining the status quo during litigation—bears a "doubly demanding" burden:

23  "[he] must establish that the law and facts clearly favor [his] position, not simply that [he]

24  is likely to succeed." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

25  The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored"

26  and "should not issue in doubtful cases." Id. (internal quotations omitted). The PLRA

27  similarly instructs that any restraining order or preliminary injunction granted with respect

28  to prison conditions "must be narrowly drawn, extend no further than necessary to correct

1   the harm the court finds requires preliminary relief, and be the least intrusive means

2   necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

3         Finally, "there must be a relationship between the injury claimed in the motion for

4   injunctive relief and the conduct asserted in the underlying complaint." Pac. Radiation

5   Oncology, LLC v. Queen's Medical Ctr., 810 F.3d 631, 636 (9th Cir. 2015). "This requires

6   a sufficient nexus between the claims raised in a motion for injunctive relief and the claims

7   in the underlying complaint itself." Id. The necessary connection is satisfied "where the

8   preliminary injunction would grant 'relief of the same character as that which may be

9   granted finally.'" Id. (quoting De Beers Consol. Mines, 325 U.S. 212, 220 (1945)). "Absent

10  that relationship or nexus, the district court lacks authority to grant the relief requested."

11  Id.

12  **V.     CONCLUSION**

13        **IT IS THEREFORE ORDERED** that Plaintiff's application to proceed in forma

14  pauperis (ECF Nos. 1-1, 5) is **CONSIDERED COMPLETE**, but a decision on the

15  application is **DEFERRED** until later.

16        **IT IS FURTHER ORDERED** that the First Amended Complaint (ECF No. 11) is

17  **DISMISSED** without prejudice in its entirety.

18        **IT IS FURTHER ORDERED** that all Defendants are **DISMISSED** without prejudice.

19        **IT IS FURTHER ORDERED** that Plaintiff has **until May 19, 2023** to file an

20  amended complaint.

21        **IT IS FURTHER ORDERED** that, if Plaintiff chooses to file an amended complaint,

22  he should use the approved form and he will entitle it "Second Amended Complaint."

23  Plaintiff is advised that the Court will screen the amended complaint in a separate

24  screening order and the screening process will take several months. If Plaintiff chooses

25  not to file an amended complaint, this action will be subject to dismissal without prejudice

26  for failure to comply with this Court's order.

27        **IT IS FURTHER ORDERED** that the motions for a temporary restraining order and

28  a preliminary injunction (ECF Nos. 6, 7) are **DENIED** without prejudice.

1    **IT IS FURTHER ORDERED** that the Clerk of the Court will **SEND** Plaintiff the

2    approved form for filing a 42 U.S.C. § 1983 complaint, instructions for the same, and a

3    copy of his First Amended Complaint (ECF No. 11).

4

5    DATED: April 19, 2023

6    _____
     RICHARD F. BOULWARE, III

7    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28